Jared Allebest, #13485
Attorney for Plaintiffs
8978 South Quarry Stone Way
Sandy, UT 84094
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH SCHOOLS FOR THE DEAF AND THE BLIND, an organization, JEAN MASSIEU SCHOOL OF THE DEAF, an organization, UTAH ASSOCIATION OF THE DEAF, an organization and Roes I-X | COMPLAINT<br><br>Civil No. 2:19-cv-00733-PMW<br><br>Judge Paul M. Warner |
| Plaintiffs, | Jury Trial Requested |
| vs. | |
| FRANK MACK, an individual, SOUTHERN UTAH UNIVERSITY, an organization, UTAH SHAKESPEARE FESTIVAL, an organization, and ROES I-X | |
| Defendants. | |

UTAH SCHOOLS FOR THE DEAF AND THE BLIND (hereinafter "USDB"), JEAN MASSIEU SCHOOL OF THE DEAF, (hereinafter "JMS"), and UTAH ASSOCIATION OF THE DEAF (hereinafter "UAD") by and through their attorney JARED M. ALLEBEST of the Allebest Law Group, hereby submit the following:

## PRELIMINARY STATEMENT

1. USDB and/or JMS has been participating in the Utah Shakespeare Festival for approximately ten (10) years. Many of the students at USDB are Deaf or hard of hearing and are bilingual in English and American Sign Language (ASL). Some students either hearing aids,

cochlear implants, or other similar personal amplification devices.  On one or more occasions, the Defendants failed, or refused to provide, a team of qualified and certified ASL interpreters upon request.

2. Congress enacted the Americans with Disabilities Act (ADA) in 1990 to "remedy widespread discrimination against disabled individuals. In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674–75, 121 S. Ct. 1879, 1889, 149 L. Ed. 2d 904 (2001).

3 Congress specifically noted that discrimination "against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." *Id.* at 675.

4. Furthermore, it "noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." § 12101(a)(5). After thoroughly investigating the problem, Congress concluded that there was a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals, and to integrate them "into the economic and social mainstream of American life." *Id.* citing S.Rep. No. 101–116, p. 20 (1989); H.R.Rep. No. 101–485, pt. 2, p. 50 (1990), U.S.Code Cong. & Admin.News 1990, pt. 2, pp. 303, 332.

5. Congress "explicitly found that 'individuals with disabilities ... have been ... relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals.' " *National Federation of the Blind v. Lamone*, 813 F.3d 494,

2

507 (4th Cir. 2016) quoting *Tennessee v. Lane*, 541 U.S. 509, 516, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004) (quoting 42 U.S.C. § 12101(a)(7)).

6. The ADA works by ensuring "that disabled individuals are afforded an opportunity to participate in voting that is equal to that afforded others, helps ensure that those individuals are never relegated to a position of political powerlessness." *Id.* Internal citations omitted.

7. Finally, the ADA is to be interpreted liberally, in favor of promoting accessibility. See *McGary v. City of Portland*, 386 F.3d 1259, 1668 (9th Cir. 2004).

8. The Lieutenant Governor's Office is a political subdivision of the State of Utah. It is jointly and severally (including various agencies and divisions), classified as "public entities" for purposes of 42 U.S.C. § 12132 and the implementing regulations, 28 C.F.R. § 35.104.

9. A public entity means "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 28 C.F.R. § 35.104(1)-(2). Southern Utah University (hereinafter "SUU") is a public entity that falls under the ADA Title II ("Title II").

10. SUU, (including its various agencies, divisions and instrumentalities) are obligated by Title II to ensure that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

11. A "qualified individual with a disability means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 28 C.F.R. § 35.104. The

Plaintiffs are individuals with a disability and have a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 28 C.F.R. § 35.108(a)(1)(i).

12. Under Title II, a public entity (including its various agencies, divisions and instrumentalities), shall not exclude a qualified individual with a disability "from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.130(a). Neither can a public entity deny "a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service" or "afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others." 28 C.F.R. § 35.130(b)(i)-(ii).

13. Title II requires a covered entity, including public universities, to "operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

14. In order for a public entity to meet their legal obligations under Title II, they "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others" so that "qualified individuals with disabilities, including applicants, participants, companions, and members of the public" get "an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(a), (b)(1).

15. Public entities such as SUU are required to provide auxiliary aids and services to qualified individuals with a disability. Auxiliary aids and services includes "qualified interpreters on-site or through video remote interpreting, real-time computer-aided transcription services" as

well as "closed caption decoders; open and closed captioning, including real-time captioning" or "equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 35.104)(1).

16. Providing qualified interpreters is part of Title II's mandate that a public entity such as a college or university is to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 35.160(b)(1). The "type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 35.160(b)(2).

17. Title II also requires a public entity to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(7)(i). Furthermore, a public entity "shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). However, a public entity "may impose legitimate safety requirements necessary for the safe operation of its services, programs, or activities. However, the public entity must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities." 28 C.F.R. § 35.130(h).

18. Title II requires a covered entity, such as local governments or agencies, to "operate each service, program, or activity so that the service, program, or activity, when viewed in its

entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

19. A "public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility." 28 C.F.R. § 35.130(f).

20. Moreover, a public entity "shall give primary consideration to the requests of individuals with disabilities" when "determining what types of auxiliary aids and services are necessary." 28 C.F.R. § 35.160(b)(2).

21. Under Title II, a "State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this Act. In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State." 28 C.F.R. § 35.178 "State immunity."

22. SUU failed to establish within their agencies and divisions, policies, practices, and procedures required under Title II and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a, to ensure that individuals with a disability are not subjected to discrimination. If such policies do exist, the Defendants (including all various agencies, divisions and instrumentalities) failed to ensure that agents, and/or its other agents, are aware of the policies and/or are properly trained to follow and practice the procedures such policies would mandate. Furthermore, the Defendants' illegal methods of administration over their respective programs and/or personnel tend to exclude and segregate individuals with a disability from the benefits of public programs or services.

6

23. The Utah Shakespeare Festival (hereinafter "USF") can be viewed as falling under Title II as agents and/or instrumentalities of the State of Utah by virtue of the fact that on USF's official website, it states that the "Utah Shakespeare Festival is part of Southern Utah University, a relationship that has helped foster the growth and viability of the Festival for over fifty years." (See Exhibit #1).

24. Alternatively, USF can be viewed as agents or instrumentalities of the State of Utah, and may be viewed as a public accommodation operating jointly or cooperatively with SUU as a public entity under the ADA Title III ("Title III"). As a result, the Defendants, jointly and severally (including various agencies and divisions), lease, own or operate places of "public accommodation" for purposes of 42 U.S.C. § 12132 and the implementing regulations,. § 36.104.

25. The Defendants (including their various agencies and divisions) are obligated by Title III to ensure that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." 28 C.F.R. § 36.201.

26. Under the ADA, USF are agents and/or instrumentalities of the SUU because the "Utah Shakespeare Festival is part of Southern Utah University, a relationship that has helped foster the growth and viability of the Festival for over fifty years." (See Exhibit #1).

27. The Defendants failed to establish within their agencies and divisions policies, practices, and procedures required under the ADA to ensure that individuals with a disability are not subjected to discrimination. If such policies do exist, the Defendants (including all various agencies and divisions) failed to ensure that agents, and/or its other agents, are aware of the policies and/or are properly trained to follow and practice the procedures such policies would

mandate. Furthermore, the Defendants' illegal methods of administration over their respective programs and/or personnel tend to exclude and segregate individuals with a disability from the benefits of public programs or services.

28. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a, and its regulations require that any entity which receives federal funds to ensure that "no qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity." 34 C.F.R. § 104.4(a). Furthermore, the entity "in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap" refuse "a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service" or "otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service." 34 C.F.R. § 104.4(b)(1)(vi), (vii).

29. The Defendants violated Section 504 and its regulations when their agents, or employees, at various times and places have refused to provide effective communication with an individual who is Deaf or to modify its policies, practices or procedures to accommodate qualified and certified ASL interpreters to interpret plays at the Utah Shakespeare Festival.

30. The Defendants violated 42 U.S.C. § 1983 and its regulations when their agents, or employees, at various times and places have caused the Plaintiffs to be subjected to the deprivation of any rights, privileges, or immunities secured by the U.S. Constitution and laws when they refused to provide effective communication for Deaf and hard of hearing students who attend USDB and/or JMS and wish to see a theatrical showing of Hamlet at USDB.

31. The Defendants, SUU and/or USF, denied individuals with a disability within their

jurisdiction the equal protection of the laws when they refused to provide effective communication with an individual who is Deaf or to modify their policies, practices or procedures to accommodate Deaf students from USDB and/or JMS who wish to see a theatrical showing of Hamlet with an American Sign Language Interpreter.

32. The Defendants, SUU and/or USF deprived individuals who are Deaf and communicate via ASL of the opportunity to participate in Utah Shakespeare Festival, by refusing to provide effective communication for deaf students who are Deaf and a theatrical showing of Hamlet with an American Sign Language Interpreter.

33. The Defendants, SUU and/or the USF, failed to establish within their agencies and divisions policies, practices, and procedures required under the ADA, Section 504, and Section 1 of the Fourteenth Amendment, to ensure that individuals with a disability are not subjected to discrimination. If such policies do exist, the Defendants (including all various agencies and divisions) failed to ensure that agents, and/or its other agents, are aware of the policies and/or are properly trained to follow and practice the procedures such policies would mandate. Furthermore, the Defendants' illegal methods of administration over their respective programs and/or personnel tend to exclude and segregate individuals with disabilities from the benefits of public programs or services.

## JURISDICTION AND VENUE

34. This action arises under the laws of the United States, including the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 (2012) ("ADA"), specifically 42 U.S.C. §§ 12131–12134 ("Title II") and 42 U.S.C. §§ 12181–12189 (2012) ("Title III"), 29 U.S.C. § 794a ("Section 504"), and 42 U.S. Code § 1983.

35. The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. §

1343(a)(3), as well as 42 U.S.C. § 12188(a), 42 U.S.C. §12133, and 42 U.S.C. § 1983 for claims arising under color of law.

36. Venue for this action is appropriate in the United States District Court for the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(b) and (c), as the claim arose in such district and, further, as the Defendants conduct business in such district.

## THE PARTIES

37. The Utah Schools for the Deaf and the Blind ("USDB") support approximately 1,800 students across the State of Utah. Including USDB's Educational Support Services, the number of children served statewide is more than 3,900. In the Salt Lake City area, 120 students attend the Jean Massieu School for the Deaf and the C. Mark Openshaw Education Center. Utah Schools for the Deaf and the Blind elementary students are on campus in Millcreek, Utah. In Ogden, 50 students attend the Utah Schools for the Deaf and the Blind campus. Within the same facility, the deaf and hard of hearing students attend the Kenneth Burdett School for the Deaf and the blind and visually impaired students attend the School for the Blind. The majority of USDB students attend their local school districts throughout Utah. USDB supports them with outreach teachers, aids, programs, resources and technology, based on their individual educational needs.

38. The Jean Massieu School of the Deaf ("JMS') was founded in 1999 as a charter school by the local Deaf Community in the Salt Lake City area to support students in having a truly bilingual education: American Sign Language and English. Several years later, JMS merged with the Utah Schools for the Deaf and Blind to align both organizations missions to best support the needs of deaf/hard-of-hearing children throughout all of Utah. JMS serves deaf/hard-of-hearing students preschool through post-high school as determined by an IEP/504 team. The Utah Deaf School ranks #1 nationwide in high school completion rates for deaf students. The

10

school for the deaf celebrates all communication modalities and allows students to find the education that works best for them. The students are given access to American Sign Language as well as Listening and Spoken Language skills. JMS is located at 1655 East 3300 South, Salt Lake City, Utah 84106.

39. The Utah Association of the Deaf (UAD), an organizational Plaintiff, is a non-profit organization dedicated to the educational, social and economic welfare of Deaf individuals in the state of Utah.   Its members are placed at risk by the discriminatory policies, practices, and procedures of the Defendants.

40. The Plaintiffs, the UAD, is a Utah non-profit corporation organized for the purpose of helping to eliminate discrimination against individuals who are Deaf or Hard of Hearing by ensuring compliance with laws intended to provide access, effective communication, public accommodations and public benefits and services. The ADA constitutes such a law. The UAD is qualified as a charitable organization under 26 U.S.C. § 501(c)(3). Members of the UAD are primarily individuals who are Deaf or Hard of Hearing and persons related to individuals who are Deaf or Hard of Hearing. The UAD has over 1000 members, most of whom are residents of Utah. Many UAD members require ASL interpreters for effective communication when accessing government programs and services, as well as public accommodations which contract with public entities to provide services. UAD members have been or will be subjected to discrimination, lack of access, and limitations to services when compared with non-disabled individuals when attempting to access programs and services the Defendants sponsor and operate.

41. The UAD has standing as the representative of its members and in its own right. The UAD's organizational purpose is adversely affected by the Defendants engaging in

discrimination including by: (1) failing to provide effective communication to individuals who are Deaf via auxiliary aids and services; (2) employing administrative methods which result in exclusion, denial of services, and segregation of individuals with a disability; (3) failing to adjust policies and procedures which have the effect of discrimination against individuals with a disability, such as the Defendants' failure to provide a qualified ASL interpreter when they know or should know they will be interacting with a person who is Deaf or Hard of Hearing, and failure to provide an ASL interpreter when needed to establish effective communication.

42. The UAD and its members suffered direct and identifiable injury as a result of the Defendants' actions, as the UAD and its members and potential members are injured when municipalities and commercial businesses refuse to comply with the ADA, but instead continue to discriminate against individuals with a disability. As a result of their disability, certain features of accessibility are necessary to allow the UAD's members access to public benefits and services, access which is required under the ADA. Accordingly, the UAD's members with a disability cannot fully and evenly participate in the amenities of living in Utah unless the Defendants comply with the requirements of title II and/or title III.

43. Southern Utah University (SUU) is a state owned educational institution operating in Iron County in which it provides educational services to the public who elect to attend the school as students of Southern Utah University (SUU). It is a public university that has more than 145 undergraduate programs and 18 graduate and certificate programs across six academic colleges. It is located in Cedar City at 351 W. University Blvd., Cedar City, Utah 84720.

44. Frank Mack is on the Utah Shakespeare Board of Governors as the Executive

Producer of the Utah Shakespeare Festival.[1] (See Exhibit #2)

45. The Utah Shakespeare Festival was founded in 1961 and presented its first season in 1962. The Utah Shakespeare Festival is a destination theatre that presents life-affirming classical and contemporary plays and musicals, in rotating repertory, and interactive experiences. "The home of the Utah Shakespeare Festival is at the Beverley Taylor Sorenson Center for the Arts on the campus of Southern Utah University. This exciting $39.1 million dollar arts complex was dedicated July 7, 2016. It includes three theatres used by the Festival: The outdoor Engelstad Shakespeare Theatre, the beautiful Randall L. Jones Theatre, and the 200-seat black box Eileen and Allen Anes Studio Theatre. In addition, the center includes the magnificent Southern Utah Museum of Art, as well as office, rehearsal, educational, and artistic space for the Festival. The buildings are surrounded by gardens, sculpture gardens, a seminar grove, a Greenshow performance space and much more."[2] The Utah Shakespeare Festival is "part of Southern Utah University, a relationship that has helped foster the growth and viability of the Festival for over fifty years.[3] (See Exhibit #1).  The Utah Shakespeare Festival is located at 195 West Center St., Cedar City, Utah, 84720 and its mailing address is 351 W Center St, Cedar City, Utah 84720.

46. SUU is a public entity that leases and operates places of public accommodation as defined by the ADA such as undergraduate, postgraduate, or other place of public accommodation and as well as a theater, concert hall, stadium, or other place of exhibition or entertainment, an auditorium, lecture hall, or other place of public gathering, a place of public display or collection and/or other place of recreation.  See 28 C.F.R. § 35.104 (Title II), see also

[1] Governing Boards, Utah Shakespeare Festival, 2019, https://www.bard.org/governing-boards. Accessed on October 3, 2019.
[2] Our Theateres, Utah Shakespeare Festival, 2019, https://www.bard.org/about#our-theatres. Accessed on October 3, 2019.
[3] "About US", Utah Shakespeare Festival, 2019, https://www.bard.org/about#mission-statement Accessed on October 3, 2019.

28 C.F.R. § 36.104(3-4), (8-10) (title III).

47. USF is a private entity that leases and operates places of public accommodation as defined by the ADA such as a theater, concert hall, stadium, or other place of exhibition or entertainment, an auditorium, lecture hall, or other place of public gathering, a place of public display or collection and/or other place of recreation.  28 C.F.R. § 36.104(3-4, 8-9) (title III).

## FACTS

48. The Utah Shakespeare Festival was founded in 1961 and presented its first season in 1962 and is currently operating a Shakespeare festival in Cedar City for its 2019 season. For "its fifty-eighth annual season, the Festival's 2019 season will feature eight (or depending how you count, nine) plays from June 27 to October 12, 2019."[4]  It has announced a "new, extended season for 2020. The Tony Award-winning theatre company will be producing nine plays from June 1 to October 10, a season that is three weeks longer than this year."[5]

49. From October 3 to 5 2019 over "3,500 students from more than 130 schools in eight states will descend on the Utah Shakespeare Festival and Southern Utah University as part of the forty-third annual Shakespeare Competition, the largest scholastic Shakespeare competition in the country." Competitors "range from sixth grade to high school seniors. Each participating school is invited to prepare monologues, two duo/trio scenes, and ensemble scenes, as well as an interpretive dance, minstrel and madrigal music. Technical theatre students will also compete in the numerous "backstage" areas of theatre, where they will be tested and trained in lighting, audio, set construction, props, rigging, costumes, hair and makeup, and stage management. Performing on Festival stages and in many classrooms on the SUU campus, students are

---

[4] Announcing the 2019 Season, Utah Shakespeare Festival, 2019, https://www.bard.org/news/announcing-the-2019-season. Accessed on October 3, 2019
[5] Announcing our 2020 Season, Utah Shakespeare Festival, 2019 https://www.bard.org/news/announcing-our-2020-season. Accessed on October 3, 2019.

adjudicated by professional actors, directors, dancers, musicians, and artists." [6] (See Exhibit #3).

50. USDB/JMS has been competing at the annual Shakespeare Competition hosted by the Utah Shakespeare Festival (USF) and watching the performances they offer to students for the last 7 years.

51. During that time the Utah Shakespeare Competition provided an ASL interpreter for these performances until last fall 2018.

52. In fall of 2019, USF informed us that they had made a decision to no longer provide any ASL interpreters and that they would only provide "live captioning" as an accommodation for deaf and hard of hearing individuals.

53. USDB/JMS disagreed with USF provide "live captioning" as an accommodation for its students and for deaf and hard of hearing individuals.  After some discussions between the parties, USF/SUU agreed to pay us up to $1,000 for providing interpreters at the performances; which is what occurred.

54. This year on August 19th, when USDB/JMS requested tickets for the performance of Hamlet on October 4th at 9 am, USF/SUU informed USDB/JMS that they would not provide ASL interpreters nor compensate USDB/JMS.

55. On September 20th, Michelle Tanner, the Associate Superintendent of the Deaf at the Utah Schools for the Deaf and Blind, met with four members from the USF, including Frank Mack, hoping that we could resolve this dispute by explaining the need for this accommodation for my students.  Frank was adamant that he felt live captioning was sufficient and that if Mrs. Tanner disagreed, Mr. Mack encouraged Ms. Tanner to sue him.  Then, he stormed off.

---

[6] High School Competition Oct. 3–5, Utah Shakespeare Festival, 2019 https://www.bard.org/news/high-school-competition-oct-35. Accessed on October 3, 2019.

56. Afterward, USDB/JMS received an email from Michael Bahr (Frank Mack was cc'd) stating the following: Michelle, I am grateful that I got a chance to meet you on Friday. I am thrilled that the students from the School for the Deaf will be participating in the Shakespeare Competition. In regard to the Hamlet performance, the Festival will not be providing ASL interpreters for the Hamlet performance on Sept. 4th. We have placed your students at the front of the theatre in proximity to the stage and provided a space and lighting for interpreters. You will need to bring your own interpreters. We can provide closed captioning for this performance. We would need to know as soon as possible if you desire closed captioning so we can contract those providers. Thank you, Michael Bahr Education Director Utah Shakespeare Festival." (See Exhibit # 4).

57. Fifteen (15) deaf students and two (2) deaf adults from USDB/JMS are currently en route to the Utah Shakespeare Festival and there still has been no ASL interpreter secured for the performance of Hamlet for the students to enjoy on October 4th, 2019.

58. At Frank Mack's invitation, the Plaintiffs now file this complaint against the Defendants.

## ASL INTERPRETERS ARE BETTER THAN OPEN CAPTIONING AT SHAKESPEARE'S PLAYS

59. Theater is about seeing a play, not hearing it performed. Volumnia in *Coriolanus* remarks that "action is eloquence, and the eyes of th' ignorant More learned than the ears ..." (III.ii.76-77).   As a result, providing ASL interpreters will help USDB students enjoy the "eloquent action" of Shakespeare's plays in their native language.

60. Many deaf individuals in the United States utilize American Sign Language (ASL) as

16

their primary language and means of communication.[7] Although derived from English, ASL is a distinct language "with a separate historical tradition, and separate morphological and syntactic principles of organization."[8] Thus, ASL is a distinct language with its own vocabulary and grammar, not a signed version of English.

61. The distinguished English director Richard Eyre, explained that the "life of the plays is in the language, not alongside it, or underneath it."[9] Shakespeare was a man of language and words. He was a master of the English language and his use of Elizabethan language is what makes his plays great.

62. Given that Shakespeare's plays are all about "words, words, words." (II.ii. 192), it is important that USDB students as well as Deaf and hard of hearing individuals who have come to see the Utah Shakespeare Festival are able to understand the play and not just see the words flash by on a captioned screen.

63. "Communication access" means conveying information to an individual in such a way that they can easily understand what is being told to them.  As explained above, the ADA requires that title II entities (state and local governments) and title III entities (businesses and nonprofit organizations that serve the public) communicate effectively with people who are Deaf or hard of hearing. The goal is to ensure that communication with people with a hearing loss is equally effective as communication with people without disabilities.

64. By providing captioning to the students of USDB, it robs the students of the ability to enjoy and understand his plays since Shakespeare wrote his play in Elizabethan English.

---

[7] Bonnie P. Tucker, Deaf Prison Inmates: Time to Be Heard, 22 Loy. L.A. L. Rev. 1, 1 (1988) [hereinafter Tucker, Deaf Prison Inmates].
[8] Robbin Battison, Lexical Borrowing in American Sign Language 91-92 (1978).

[9] *Utopia and Other Places* (1993), p. 176

Students who are a Deaf or hard of hearing will already have a hard time understanding his plays since English is not their first language. To make things even more challenging for these students, the captioning will be done in Elizabethan English. In other words, English is hard enough but having to read the play in Early Modern English just adds to the difficulty for the USDB students. Finally, the young Deaf students may not possess the vocabulary necessary to understand some of the moderate or complex words in the play.

65. Although the students at USDB receive excellent education, reading and writing is generally a challenge for some individuals who have a hearing loss.  Many Deaf Americans have limited knowledge of the rules of English grammar, and do not use English grammar even when writing.[10]   In fact, the average deaf high school graduate reads and writes at the fourth grade level.[11]  It is worth noting that there are other credible reports which indicate that "thirty percent of the deaf population is functionally illiterate, reading at a grade level 2.8 or below and approximately 60% of deaf persons are unable to read and understand the Miranda warnings, which are typically written at about the eighth-grade level."[12] This situation has remained constant during the past twenty years.[13]

66. However, providing ASL interpreters is effective communication and will provide communication access since the ASL interpreters will interpret the play as to allow the USDB

---

[10] See Michael Strong, *Language Learning and Deafness* p.6 (1988) (summarizing the results of numerous studies showing that function words and morphology are considerably difficult for the hearing impaired).

[11] Id.; see also Marie Arana-Ward, As Technology Advances, a Bitter Debate Divides the Deaf, Wash. Post, May 11, 1997, at A1. The average deaf person today reads at a fourth-grade level. One in three drops out of high school. Only one in five who starts college gets a degree. Deaf adults make 30 percent less than the general population. Their unemployment rate is high, and when they are employed, it is usually in manual jobs such as kitchen workers, janitors, machine operators, tailors and carpenters, for which a strong command of English is not required.

[12] Jean F. Andrews, McCay Vernon & Michel LaVigne, The Bill of Rights, Due Process and the Deaf Suspect/Defendant, REGISTRY OF INTERPRETERS FOR THE DEAF JOURNAL OF INTERPRETATION 12 (2007).

[13] Tucker, Deaf Prison Inmates, supra note 31, at 1 & n.3 (citing a study by the Office of Demographic Studies, Gallaudet College, Academic Achievement Test Results of a National Testing Program for Hearing Impaired Students in the United States (Spring 1981)).

students to hear the play with their eyes.  It will be provided in their native language. This means that the students will be free to explore the richness of Shakespeare's stories and will learn to appreciate the "eloquent action" of language. With ASL interpreters, deaf people will get the double benefit of seeing the play and seeing the language of the play in action.

67. Given the beauty and power of Shakespeare's use of language in his plays, it translates well into ASL. Jill Bradbury, a professor at Gallaudet University, a college for students who are deaf. She explains that "there are many layers of Shakespeare's meaning that ASL can illuminate in ways that spoken languages cannot. Shakespeare was, you know, written to be performed, and Shakespeare's plays contain a lot of descriptive language, because back in the 16th century, theaters typically didn't use very elaborate set designs, they didn't have the same light effects. So Shakespeare wrote those into his text, to give people the description of the surroundings and the environment, and oftentimes, overlaid that physical description with information about characters. One thing that ASL is able to do is take that descriptive visual language and make it present in ways that spoken language isn't able to do."[14]

68. Ms. Bradbury explains that "the earliest mention that we have been able to find of Shakespeare at Gallaudet dates back to 1882. There is an article in the newspaper that talks about a Gallaudet student performing a section of *As You Like It* at a benefit for a local Washington, DC charity written up in the newspaper. There are mentions of Gallaudet students performing at benefits and providing literary entertainment for people in Washington DC almost since-I think 1866 was the earliest, when they first started popping up, and they show up quite regularly in the late 19th-century newspaper. And so it's clear that ASL performance was very popular in the DC

[14] Shakespeare Unlimited: Shakespeare in Sign Language: A tour of the First Folio: Eyes on Shakespeare exhibition at Gallaudet University. Folger Shakespeare Library podcast October 18, 2018
https://www.folger.edu/sites/default/files/ShaxUnlimited_Gallaudet_Transcript.pdf

area and appreciated by people."[15]

69. As a result, providing ASL interpreters will not only satisfy the ADA requirements to provide effective communication, it will dovetail with the longstanding history and tradition within the Deaf community of seeing Shakespeare's plays performed in ASL. Given that the Deaf community is united by language, it is not odd for deaf people to appreciate Shakespeare's clever and experimental use of language. After all, Shakespeare has invented many words in the English language that we still use today. ASL is all about language and deaf people love finding creative ways to express ideas and concepts. Thus, providing ASL interpreters at the High School Shakespeare Competition is in line with Deaf Culture given the Deaf community's cultural love of language. Deaf people love Shakespeare's appreciation of language.

## FIRST CAUSE OF ACTION

(Injunction and Damages for Violation of Title II of the ADA - Failure to Afford Effective Communication Against SUU, and USF)

70. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 68 hereof, and incorporate the same herein by reference.

71. The Plaintiffs are qualified individuals with a disability as defined by the ADA and is subjected to discrimination because the Defendants failed to ensure effective communication through the provision of auxiliary aids, or give deference to the aid or service requested by the Deaf individual.

72. Officers in their official capacities and as agents of SUU and/or USF discriminated against the Plaintiff because he is an individual with a disability by failing or refusing in their positive duty to modify its policies, practices and procedures in reasonably accommodating

---

[15] Id.

members of the public with a disability, including the Plaintiffs.

73. The Officers, in all instances, individually and acting as Defendants' agents, denied Plaintiff's access to effective communication, segregated him, and cut him off from participating in the electoral and political process by reason of his disability.

74. The acts or omissions of Defendants (or its agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs', including UAD members, much-cherished independence. The injuries sustained by the Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by injunction and policy change.

75. These real and tangible injuries caused the Plaintiff to incur costs in the form of fees and interest resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

76. The Plaintiff has been forced to engage the services of an attorney. Therefore, he is entitled to an award of attorneys' fees and costs. 28 C.F.R. § 35.175.

## **SECOND CAUSE OF ACTION**

(Injunction and Damages for Violation of Title II of the ADA for excluding from participation in or denying the benefits of the services, programs, or activities of a public entity)

77. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs

1 through 76 hereof, and incorporate the same herein by reference.

78. The Plaintiffs are qualified individuals with a disability as defined by the ADA and were subjected to intentional discrimination at the hands of the State of Utah, SUU, and USF by reason of the Plaintiffs' disability.

79. The Defendants discriminated against the Plaintiffs because of their disability by failing to or refusing to provide a qualified and certified ASL Interpreter upon request for the theatrical showing of Hamlet at the Utah Shakespeare Festival.

80. The ADA places a positive duty on the State of Utah, SUU, and USF which are organizations that own, lease and/or operate public places of accommodation and that provide services to the public, to ensure that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." 28 C.F.R. § 36.201.

81. The Defendants' failure to obtain a qualified and certified ASL Interpreter and to provide reasonable alternatives to a stand-up vote was a "denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation." 28 C.F.R. § 36.202(a).

82. The acts or omissions of the Defendants (or their agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by the Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and

permanent injunctions, enjoining the Defendants from further violations of the ADA.

83. Because the Plaintiffs, who educate deaf and hard of hearing students at USDB and/or JMS or represent the Utah Deaf and hard of hearing community via Utah Association of the Deaf , are injured and suffered severe emotional distress (much more than a typical person could be expected to endure), they are entitled to compensation for such injuries.

84. Furthermore, these real and tangible injuries have caused the Plaintiffs to incur costs in the form of fees and interest resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

85. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs. 28 C.F.R. § 35.175.

### THIRD CAUSE OF ACTION

(Violation of Title II, ADA Disparate Treatment by Reason of Disability, Against the State of Utah, SUU, and USF)

86. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 85 hereof, and incorporate the same herein by reference.

87. The Defendants have engaged in discrimination by segregating, singling out or subjecting the Plaintiffs to disparate treatment by reason of their disability.

88. Due to the discriminatory policies, practices, and procedures of the State of Utah, SUU, and the USF, the Defendants excluded, denied services to, segregated, or otherwise treated differently the Plaintiffs by reason of their disability.

89. The Plaintiffs were and are subjected to discriminatory conditions and suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests.

90. These real and tangible injuries have caused the Plaintiffs to incur costs in the form of fees and interest resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

91. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by the Plaintiffs relating to discrimination at the Defendants' hands are ongoing until the discriminatory conditions are corrected by policy and the source of the affront and indignity is rectified.

92. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs. 28 C.F.R. § 35.175.

## FOURTH CAUSE OF ACTION

(Violation of Title II, ADA–Discriminatory Policies, Practices and Procedures, against SUU, and USF)

93. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 92 hereof, and incorporate the same herein by reference.

94. The Defendants engaged in discrimination by failing to modify their policies, practices, and procedures to ensure equal access to individuals with a disability. As a result, by

imposition or application of eligibility criteria that screen out or tend to screen out individuals with a disability, specifically individuals who are Deaf, from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations including access to effective communication based on the needs of the individual and not a generalized assumption about a community.

95. Furthermore, the Defendants discriminated by refusing to provide a certified and qualified ASL interpreter for a theatrical showing of Hamlet at the Utah Shakespeare Festival. As a result, they engaged in illegal administrative procedures towards the Plaintiffs.

96. By policies, practices and procedures, the Defendants failed or refused to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without a disability.

97. Because of the Plaintiffs' disability, the Defendants denied them the ability to fully and equally participate in the Utah Shakespeare Festival, while other members of the public are free to fully enjoy these events due to the Defendants' discriminatory behavior and practices.

98. The Plaintiffs were and are subjected to the discriminatory conditions and suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests.

99. These real and tangible injuries caused the Plaintiffs to incur costs in the form of fees and interest resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

100. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence.  The injuries sustained by the Plaintiffs relating to the discrimination at the Defendant's place of public accommodation are ongoing until the discriminatory conditions are corrected by granting the access required by law.

101. The Plaintiffs have been forced to engage the services of an attorney.  Therefore, the Plaintiffs are entitled to an award of attorney's fees and cost. 28 C.F.R. § 35.175.

## FIFTH CAUSE OF ACTION

(Injunction and Damages for Violation of Title II, ADA–Discriminatory Administrative Methods Against SUU and USF)

102. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 101 hereof, and incorporate the same herein by reference.

103. The Defendants engaged in discrimination by maintaining discriminatory and illegal administrative methods.  The Defendants discriminate by excluding individuals with a disability. The Defendants have not taken such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals.

104. The Defendants have not properly trained their officers, staff, employees, agents and/or instrumentalities as to the requirements for affording effective communication under the ADA.

105. The Plaintiffs cannot fully and equally access the services offered by the Defendants because of their respective disability. The Plaintiffs are regularly subjected to such discrimination and their opportunities are unfairly limited when public entities effectively ban

them because of their disability.

106. The Plaintiffs are subjected to the discriminatory conditions present in the State of Utah, SUU and the USF. The Plaintiffs have suffered irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests.

107. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence.  The injuries sustained by the Plaintiffs relating to the discrimination when the Defendants use places of public accommodation for events are ongoing until the discriminatory conditions are corrected by either granting the access required by law or removing or shutting down the source of the affront and indignity.

108. These real and tangible injuries caused the Plaintiffs to incur costs in the form of fees and interest resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

109. The Plaintiffs have been forced to engage the services of an attorney.  Therefore, they are entitled to an award of the attorney's fees and costs.  28 C.F.R. § 35.175.

## SIXTH CAUSE OF ACTION

(Injunction and Damages for Violation of Title III of the ADA for excluding from participation in or denying the benefits of the services, programs, or activities of a public accommodation)

110. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs

1 through 109 hereof, and incorporate the same herein by reference.

111. The Plaintiffs are qualified individuals with a disability as defined by the ADA and were subjected to intentional discrimination at the hands of the State of Utah, SUU, and the USF, and their employees, officers, agents, and instrumentalities by reason of their disability.

112. The Defendants discriminated against the Plaintiffs because of their disability by failing to or refusing to provide a qualified and certified ASL Interpreter upon request for a theatrical showing of Hamlet at the Utah Shakespeare Festival.

113. The ADA places a positive duty on the State of Utah, SUU and the USF to work with organizations that own, lease and operate public places of accommodation and that provide services to the public, to ensure that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who owns, leases (or leases to), or operates a place of public accommodation." 28 C.F.R. § 36.201.

114. The Defendants' failure to obtain a qualified and certified ASL Interpreter was a "denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation." 28 C.F.R. § 36.202(a).

115. The acts or omissions of the Defendants (or their agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by the Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and

28

permanent injunctions, enjoining the Defendants from further violations of the ADA.

116. Because the Plaintiffs were injured and suffered severe emotional distress (much more than a typical person could be expected to endure), they are entitled to compensation for such injuries.

117. These real and tangible injuries caused the Plaintiffs to incur costs in the form of fees and interest resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.    149. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they entitled to an award of the attorney's fees and costs. 28 C.F.R. § 36.505.

## SEVENTH CAUSE OF ACTION

(Violation of Title III, ADA–Disparate Treatment by Reason of Disability)

118. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 117 hereof, and incorporate the same herein by reference.

119. The Defendants have engaged in discrimination by segregating, singling out or subjecting the Plaintiffs to disparate treatment by reason of their disability.

120. Due to the discriminatory policies, practices and procedures at the URP and the UCRP, the Defendants excluded, denied services to, segregated, or otherwise treated differently the Plaintiffs by reason of their disability.

121. The Plaintiffs were and are subjected to discriminatory conditions and suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of

intangible injuries to their dignity interests.

122. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence.  The injuries sustained by the Plaintiffs relating to the discrimination at the Defendants' hands are ongoing until the discriminatory conditions are corrected by policy and the source of the affront and indignity is rectified.

123. These real and tangible injuries caused the Plaintiffs to incur costs in the form of fees and interest resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

124. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs.  28 C.F.R. § 36.505.

## EIGHTH CAUSE OF ACTION

(Violation of Title III, ADA–Discriminatory Policies, Practices and Procedures)

125. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 124 hereof, and incorporate the same herein by reference.

126. The Defendants engaged in discrimination by failing to modify their policies, practices, and procedures to ensure equal access to individuals with a disability. As a result, by imposition or application of eligibility criteria that screen out, or tend to screen out, individuals with a disability, specifically individuals who are Deaf or use a wheelchair, from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations,

including but not limited to, access to effective communication and modifying certain policies, practices and procedures for individuals who use a wheelchair based on the needs of the individual and not a generalized assumption about individuals within the disabled community.

127. Furthermore, the Defendants discriminated by refusing to provide a certified and qualified ASL interpreter upon request and failing to modify its policy, practices and procedures upon request to allow students from USDB/JMS to attend a theatrical showing of Hamlet at the Utah Shakespeare Festival. As a result, they engaged in illegal administrative procedures towards the Plaintiffs.

128. By policies, practices and procedures, the Defendants failed or refused to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals without a disability.

129. Because of the Plaintiffs' disability, the Defendants denied them the ability to fully and equally participate at State sponsored theatrical event while able-bodied individuals were free to fully enjoy these events due to the Defendants' discriminatory behavior and practices.

130. The Plaintiffs were and are subjected to the discriminatory conditions and suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests.

131. These real and tangible injuries caused the Plaintiffs to incur costs in the form of fees and interest resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

31

132. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs' much-cherished independence. The injuries sustained by the Plaintiffs relating to the discrimination at the Defendants' place of public accommodation are ongoing until the discriminatory conditions are corrected by granting the access required by law.

133. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of attorney's fees and costs. 28 C.F.R. § 36.505.

## NINTH CAUSE OF ACTION

(Injunction and Damages for Violation of Title III, ADA–Discriminatory Administrative Methods)

134. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 133 hereof, and incorporate the same herein by reference.

135. The Defendants engaged in discrimination by maintaining discriminatory and illegal administrative methods. The Defendants discriminate by excluding people with a disability. The Defendants have not taken such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals.

136. The Defendants have not properly trained employees regarding the requirements for affording effective communication under the ADA.

137. Because of the disability of deafness, the Plaintiff cannot fully and equally access the services offered by the Defendants. The Plaintiff is regularly subjected to such discrimination and their opportunities are unfairly limited when businesses effectively ban them because of their disabilities.

32

138. The Plaintiff is subjected to the discriminatory conditions present at SUU and/or USF. The Plaintiff has suffered irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity and interests.

139. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiff's much-cherished independence. The injuries sustained by the Plaintiff relating to the discrimination at the Defendants' places of public accommodation are ongoing until the discriminatory conditions are corrected by either granting the access required by law or removing or shutting down the source of the affront and indignity.

140. These real and tangible injuries caused the Plaintiff to incur costs in the form of fees and interest resulting from resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

141. The Plaintiff has been forced to engage the services of an attorney. Therefore, he is entitled to an award of the attorney's fees and costs. 28 C.F.R. § 36.505.

## **TENTH CAUSE OF ACTION**

(Injunction and Damages for Violation of Section 504 of the Rehabilitation Act)

142. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 141 hereof, and incorporate the same herein by reference.

143. The Defendants are subject to requirements of Section 504 because they receive federal funds to support services or programs.

144. The Plaintiffs are qualified individuals with a disability as defined by Section 504 of

the Rehabilitation Act, and are subjected to discrimination because they are individuals with a disability. 29 U.S.C. § 794a(b).

145. The Defendants discriminated against the Plaintiffs because they are individuals with a disability who could not have equal access and effective communication at political events involved in the selection of candidates for political office because they have a disability, or refused to provide such intentionally and by reason of policy, practice, or procedure.

146. The Staff and Administrators, in all instances, individually and acting as the Defendants' agents, denied the Plaintiffs' requests for reasonable accommodations for equal access and effective communication at political events involved in the selection of candidates for political office. They discriminated against the Plaintiffs intentionally, recklessly and with malicious disregard for the Plaintiffs' federally protected rights, because they are individuals with a disability.

147. The acts or omissions of the Defendants (or its agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs', including UAD members, much-cherished independence. The injuries sustained by the Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and permanent injunctions, enjoining the Defendants from further violations of Section 504.

148. Because the Plaintiffs are injured by the intentional acts of the Defendants and suffered severe emotional distress (much more than a typical person could be expected to endure), they are entitled to compensation for such injuries.

149. These real and tangible injuries caused the Plaintiffs to incur costs in the form of fees and interest resulting from resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

150. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs. 29 U.S.C. § 794a(b).

## ELEVENTH CAUSE OF ACTION

### (Injunction and Damages for Violation of 42 U.S.C. § 1983)

151. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 150 hereof, and incorporate the same herein by reference.

152. The Defendants are subject to the requirements of 42 U.S.C. § 1983 because they are under a duty to not deprive any citizen of the United States or other person within the jurisdiction thereof of any rights, privileges, or immunities secured by the U.S. Constitution and laws.

153. Title II and Title III of the ADA, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983,and the Fourteenth Amendment, privileges, or immunities secured by the U.S. Constitution and/or the laws and regulations of the United States.

154. The Defendants discriminated against the Plaintiffs because they are individuals with a disability who are protected by Title II and Title III of the ADA, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and the Fourteenth Amendment. The Defendants refused to provide effective communication by failing to reasonably accommodate USDB and/or JMS'

35

request for ASL interpreters and by refusing to modify its policies, practice and procedures by failing to reasonably accommodate students who wish to see a theatrical showing of Hamlet at the Utah Shakespeare Festival.

155. The Staff and Administrators, in all instances, individually and acting as the Defendants' agents, denied the Plaintiffs' reasonable accommodation requests for a qualified and certified ASL interpreter. They discriminated against these individuals with a disability intentionally, recklessly and with malicious disregard for the Plaintiffs' federally protected rights, because they have a disability.

156. The acts or omissions of the Defendants (or its agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs', including UAD members, much-cherished independence. The injuries sustained by Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and permanent injunctions, enjoining the Defendants from further violations of Title II of the ADA, Title III of the ADA, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and the Fourteenth Amendment.

157. Because the Plaintiffs are injured by the intentional acts of the Defendants and suffered severe emotional distress (much more than a typical person could be expected to endure), they are entitled to compensation for such injuries.

158. These real and tangible injuries caused the Plaintiffs to incur costs in the form of fees and interest resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal

funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

159. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs. 42 U.S.C. § 1988(b).

## TWELFTH CAUSE OF ACTION

(Injunction and Damages for Violation of the Fourteenth Amendment of the Constitution)

160. The Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 159 hereof, and incorporate the same herein by reference.

161. Section 1 of the Fourteenth Amendment states that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

162. The Defendants, the State of Utah, SUU and/or USF denied individuals with a disability within its jurisdiction the equal protection of the laws when it refused to provide effective communication with an individual who is Deaf or to modify its polices, practices or procedures to accommodate deaf students who wish to see a theatrical showing of Hamlet at the Utah Shakespeare Festival.

163. The Staff and Administrators, in all instances, individually and acting as the Defendants' agents, denied the Plaintiffs' reasonable accommodation requests for an ASL interpreter and not providing alternative to the stand-up vote. They discriminated against these

individuals with a disability intentionally, recklessly and with malicious disregard for the Plaintiffs' federally protected rights, because they have a disability.

164. The acts or omissions of the Defendants (or its agents) caused the Plaintiffs to suffer irreparable harm in the nature of humiliation, limitation of freedom, and other forms of intangible injuries to their dignity interests. Each of the discriminatory conditions identified above presents a palpable and substantial deprivation of a degree of the Plaintiffs', including UAD members, much-cherished independence. The injuries sustained by the Plaintiffs relating to the Defendants' discrimination are ongoing until the discriminatory conditions are corrected by preliminary and permanent injunctions, enjoining the Defendants from further violations of Section 1 of Fourteenth Amendment of the U.S. Constitution.

165. Because the Plaintiffs are injured by the intentional acts of the Defendants and suffered severe emotional distress (much more than a typical person could be expected to endure), they are entitled to compensation for such injuries.

167. These real and tangible injuries caused the Plaintiffs to incur costs in the form of fees and interest resulting from spending gas money to attend events with the expectation that an ASL interpreter would be present, hiring their own ASL interpreters, and spending personal funds to travel to meet with their attorney; funds which they would not have otherwise had to spend had the Defendants provided reasonable accommodations which would modify their policies, practices and procedures.

166. The Plaintiffs have been forced to engage the services of an attorney. Therefore, they are entitled to an award of the attorney's fees and costs. 42 U.S.C. § 1988(b).

### ***Prayer for Relief***

### **On the Plaintiffs' First Cause of Action:**

38

(a) That this court exercise jurisdiction over this entire action;

(b) That this Court declare that the actions and failures to act of the Defendants, including agencies, employees, and agents, violated the ADA's mandate to refrain from excluding "from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity" by reason of their deafness;

(c) For an order requiring the Defendants to adopt a comprehensive policy regarding communication access for members of the public who are Deaf and Hard of Hearing. If such a policy exists, an order requiring the administration to train its staff and agents including Officers of the Law in the application of such a policy;

(d) For an order requiring the Defendants to compensate the Plaintiffs for actual losses and the substantial emotional distress the Defendants' actions caused to Mr. Heineman and Mrs. Stauffer;

(e) For an order awarding the costs of this action and reasonable attorney's fees to the Plaintiffs; and

(f) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

**On the Plaintiffs' Second Cause of Action:**

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent injunction enjoining each Defendant, Defendants' agents, employees, and assigns from discrimination and disparate treatment on the basis of disability in violation of the ADA Title II; and specifically requiring the Defendants to adopt policies, practices and procedures that are fully compliant with the ADA;

(b) For an order requiring the Defendants to change their discriminatory policies,

practices and procedures to ensure that individuals with a disability are not discriminated against by staff, employees and agents and to ensure that individuals who are Deaf are actively accommodated in ways that afford them full participation in State sponsored political events and activities in a manner that is equal to that afforded to individuals without a disability;

(c) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(d) For the Plaintiffs' attorney's fees, including litigation expenses, and costs of suit; and

(e) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Plaintiffs' Third Cause of Action:

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent injunction enjoining each Defendant, Defendants' agents, employees and assigns from discrimination on the basis of disability in violation of the ADA Title II; and specifically requiring the Defendants to cease policies, practices and procedures that are not fully compliant with the ADA;

(b) For an order requiring the Defendants to change their discriminatory administrative methods to ensure that individuals with a disability are not discriminated against by staff, employees and agents by allowing individuals with a disability to participate in State sponsored political events and activities in a manner that is equal to that afforded to individuals without a disability;

(c) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(d) For the Plaintiffs' attorney's fees, including litigation expenses, and costs of suit; and

40

(e) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Plaintiffs' Fourth Cause of Action:

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent injunction enjoining each Defendant, Defendants' agents, employees, and assigns from discrimination on the basis of disability in violation of the ADA Title II; and specifically requiring the Defendants to cease all policies, practices and procedures that are not fully compliant with the ADA;

(b) For an order requiring the Defendants to change their discriminatory administrative methods in order to ensure that individuals with a disability are not discriminated against by staff, employees and agents by allowing individuals with a disability to participate in State sponsored political events and activities in a manner that is equal to that afforded to individuals without a disability;

(c) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(d) For the Plaintiffs' attorney's fees, including litigation expenses, and costs of suit; and

(e) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Plaintiff's Fifth Cause of Action:

(a) That this court exercise jurisdiction over this entire action;

(b) That this Court declare that the actions and failures to act of the Defendants, including agencies, employees, and agents, violated the ADA's mandate to refrain from excluding "from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any

program or activity" by reason of their deafness;

(c) For an order requiring the Defendants to adopt a comprehensive policy regarding reasonable accommodations and communication access for members of the public with a disability. If such a policy exists, an order requiring the administration to train its staff and agents including Officers of the Law in the application of such a policy;

(d) For an order requiring the Defendants to compensate the Plaintiffs for actual losses and the substantial emotional distress the Defendants' actions caused to Mrs. Stauffer and Mr. Heineman;

(e) For an order awarding the costs of this action and reasonable attorney's fees to the Plaintiffs; and

(f) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Plaintiffs' Sixth Cause of Action:

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent injunction enjoining each Defendant, Defendants' agents, employees and assigns from discrimination and disparate treatment on the basis of disability in violation of the ADA Title III; and specifically requiring Defendants to adopt policies, practices and procedures that are fully compliant with the ADA;

(b) For an order requiring the Defendants to change their discriminatory policies, practices and procedures in order to ensure that individuals who are deaf are not discriminated against by staff, employees and agents and to ensure that individuals with a disability are actively accommodated in ways that afford them full participation in State sponsored political events and activities in a manner that is equal to that afforded individuals without a disability;

42

(c) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(d) For the Plaintiffs' attorney's fees, including litigation expenses, and costs of suit; and

(e) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Plaintiffs' Seventh Cause of Action:

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent injunction enjoining each Defendant, Defendants' agents, employees and assigns from discrimination on the basis of disability in violation of the ADA Title III; and specifically requiring Defendants to cease policies, practices and procedures that are not fully compliant with the ADA;

(b) For an order requiring the Defendants to change their discriminatory administrative methods to ensure that individuals with a disability are not discriminated against by staff, employees, and agents by allowing individuals with a disability to participate in State sponsored political events and activities in a manner that is equal to that afforded individuals without a disability;

(c) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(d) For the Plaintiffs' attorney's fees, including litigation expenses, and costs of suit; and

(e) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Plaintiffs' Eighth Cause of Action:

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent

injunction enjoining each Defendant, Defendants' agents, employees and assigns from discrimination on the basis of disability in violation of the ADA Title III; and specifically requiring Defendants to cease all policies, practices and procedures that are not fully compliant with the ADA;

(b) For an order requiring the Defendants to change their discriminatory administrative methods in order to ensure that individuals with a disability are not discriminated against by staff, employees, and agents by allowing individuals with a disability to participate in State sponsored political events and activities in a manner that is equal to that afforded individuals without a disability;

(c) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(d) For the Plaintiffs' attorney's fees, including litigation expenses, and costs of suit; and

(e) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

## On the Plaintiffs' Ninth Cause of Action:

(a) For a declaration that the Defendants are in violation of the ADA and for a permanent injunction enjoining each Defendant, Defendants' agents, employees and assigns from discrimination on the basis of disability in violation of the ADA Title III; and specifically requiring Defendants to cease all policies, practices and procedures that are not fully compliant with the ADA;

(b) For an order requiring the Defendants to change their discriminatory administrative methods in order to ensure that individuals with a disability are not discriminated against by staff, employees, and agents by allowing individuals with a disability to participate in State

sponsored political events and activities in a manner that is equal to that afforded individuals without a disability;

(c) For actual costs and compensatory damages for injuries caused by the Defendants' failure or refusal to comply with federal law;

(d) For the Plaintiffs' attorney's fees, including litigation expenses, and costs of suit; and

(e) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court.

### On the Plaintiffs' Tenth Cause of Action:

(a) That this Court declare that the Defendants, the State of Utah, SUU and USF are subject to the requirements of Section 504 of the Rehabilitation Act;

(b) That this Court declare that the actions and failures to act of the Defendants, including agencies, employees, and agents, violated Section 504's mandate "shall not be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity" by reason of their disability;

(c) For an order requiring the Defendants to adopt a comprehensive policy regarding communication access for communication with members of the public who are disabled based on the needs of the individual members of the public. If such a policy exists, an order requiring the administration to train staff and agents in the application of such a policy;

(d) For actual costs and compensatory damages caused by the Defendants' failure or refusal to comply with federal law;

(e) For the Plaintiff's attorney's fees, including litigation expenses, and costs of suit; and

(f) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court. 29 U.S.C. § 794a(b).

**On the Plaintiffs' Eleventh Cause of Action:**

(a) That this Court declare that the Defendants, the State of Utah, via the Lieutenant Governor's Office, the URP and the UCRP are subject to the requirements of 42 U.S.C. § 1983;

(b) That this Court declare the actions and failures to act of the Defendants, including agencies, employees and agents, violated 42 U.S.C. § 1983's mandate to not deprive an individual of  "any rights, privileges, or immunities secured by the Constitution and laws" by reason of their disability;

(c) For an order requiring the Defendants to adopt a comprehensive policy regarding communication access for communicating with members of the public who are Deaf or hard of hearing based on the needs of the individual members of the public and adopt a comprehensive policy regarding modifying its policies, practices and procedures for individuals who use a wheelchair when voting. If such a policy exists, an order requiring the administration to train staff and agents in the application of such a policy;

(d) For actual costs and compensatory damages caused by the Defendants' failure or refusal to comply with federal law;

(e) For the Plaintiff's attorney's fees, including litigation expenses, and costs of suit; and

(f) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court. 42 U.S.C. § 1988(b).

**On the Plaintiffs' Twelfth Cause of Action:**

(a) That this Court declare that the Defendants, the State of Utah, SUU and the USF are subject to the requirements of the Fourteenth Amendment of the U.S. Constitution;

(b) That actions and failures to act of the Defendants, including agencies, employees and agents, violated the Fourteenth Amendment mandate to not deprive "any person within its

46

jurisdiction the equal protection of the laws" by reason of their disability;

(c) For an order requiring the Defendants to adopt a comprehensive policy regarding modifying its policy, practices and procedures with members of the public with a disability based on the needs of the individual members of the public, and adopt a comprehensive policy regarding modifying its policy, practices and procedures for individuals with a disability. If such a policy exists, an order requiring the administration to train staff and agents in the application of such a policy;

(d) For actual costs and compensatory damages caused by the Defendants' failure or refusal to comply with federal law;

(e) For the Plaintiff's attorney's fees, including litigation expenses, and costs of suit; and

(f) For such other and further relief (both under law and under the Court's broad equitable jurisdiction) deemed appropriate by the Court. 42 U.S.C. § 1988(b).


/s/: Jared Allebest_____

Jared Allebest, #13485
Attorney for Plaintiff
8978 South Quarry Stone Way
Sandy, Utah 84094
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing document was served this 3rd day of October, 2019, by hand delivering it to the following individuals at the follow address:

Utah Shakespeare Festival
351 W. Center Street
Cedar City, UT 84720

Meb W. Anderson
**Utah Attorney General's Office**
Assistant Attorney General
Southern Utah University
351 West University Blvd.
Bennion Administration Building, Suite 111
P.O. Box 8700
Cedar City, Utah 84720

/s/: Jared Allebest
Jared Allebest, #13485
Attorney for Plaintiff
8978 South Quarry Stone Way
Sandy, UT 84094
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com